UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

MALEESHA HARRIS,

                              Plaintiff,      **No. 6:15-cv-06104(MAT)**
                                              **DECISION AND ORDER**

                 -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.
─────────────────────────────────

## I.   Introduction

Maleesha Harris ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act, challenging the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for the calculation and payment of benefits.

## II.  Procedural Status

Plaintiff filed for SSI on February 27, 2012, alleging that she had become disabled on September 5, 2011, due to chronic obstructive pulmonary disease ("COPD"), neck and arm pain, bipolar disorder, asthma, gastroesophageal reflux disease ("GERD"), anxiety, insomnia, and carpal tunnel syndrome ("CTS") in both

hands. T.10, 156.[1] After her claim was denied, Plaintiff requested a hearing, which was conducted via videoconference on April 16, 2013, by administrative law judge William M. Manico ("the ALJ"). Plaintiff appeared with her attorney and testified, as did impartial vocational expert Howard S. Feldman ("the VE"). On June 25, 2013, the ALJ issued a decision finding Plaintiff not disabled. T.10-33. The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In connection with their motions, the parties have summarized the administrative transcript in their briefs, and the Court adopts and incorporates these factual summaries by reference. The record evidence will be discussed in further detail below, as necessary to the resolution of the parties' contentions.

## III. The ALJ's Decision

The ALJ followed the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 416.929(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 27, 2012, the application date.

---

[1] Numbers preceded by "T." refer to pages from the administrative transcript, submitted by Defendant as a separately bound exhibit.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: umbilical hernia, brachioplexus stretch, asthma, anxiety disorder, depressive disorder, and bipolar disorder. T.12. At step three, the AL found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" because "[n]o treating or examining physician has indicated findings that would satisfy the criteria of any listed physical impairment." T.13. The ALJ specifically considered two listed impairments, Listing 12.04 (Affective Disorders) and Listing 12.06 (Anxiety Disorders). With regard to the "Paragraph B" criteria, the ALJ found that Plaintiff has "mild" restrictions in activities of daily living and in social functioning; "moderate" difficulties in maintaining concentration, persistence or pace; and has not experienced any episodes of decompensation. The ALJ also determined that the "Paragraph C" criteria were not satisfied, insofar as Plaintiff not experienced, _e.g.,_ episodes of decompensation of extended duration.

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that she has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following exceptions:

> [She] is limited to walking continuously for approximately 15 minutes. [She] may only occasionally climb ramps or stairs, or crawl. [She] may frequently stoop, kneel, crouch, or balance. [She] may never climb

ladders, ropes, or scaffolds. [She] should avoid extremes
of cold, heat and humidity. [She] should avoid
concentrated exposure to dust, fumes, odors, gases etc.
[She] should avoid exposure to hazards. [She] retains the
mental [RFC] to perform simple unskilled work involving
simple instructions which is relatively low stress in
nature. [She] should be allowed a regular work break
approximately every 2 hours.

T.15 (footnotes omitted).

At step four, the ALJ noted that Plaintiff has no past relevant work per the earnings record, and was 33 years-old on the application date, with at least a high school education and the ability to communicate in English. T.28. Because Plaintiff has no past relevant work, the ALJ found, transferability of job skills was not material to the disability determination.

At step five, the ALJ relied on the VE's testimony to find that, considering Plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that she can perform. Specifically, the ALJ cited the VE's testimony that a person with Plaintiff's RFC and vocational profile could perform the requirements of such representative occupations as cashier and mail clerk. T.28-29. Accordingly, the ALJ entered a finding of not disabled.

**IV.  Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record.

_See_ 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. _Tejada v. Apfel_, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." _Byam v. Barnhart_, 336 F.3d 172, 179 (2d Cir. 2003) (citing _Townley v. Heckler_, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, the Commissioner's "[f]ailure to apply the correct legal standards is grounds for reversal." _Townley_, 748 F.2d at 112; _see also_, _e.g._, _Johnson v. Bowen_, 817 F.2d 983, 985 (2d Cir. 1987).

## V.   Discussion

### A.   Legal and Factual Errors in Weighing the Opinion of Treating Psychiatrist Dr. Spurling

Plaintiff argues that the ALJ misapplied the treating physician rule and erroneously discounted the opinions of her treating psychiatrist, Ronald Spurling, M.D.

In the Second Circuit, "the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" _Halloran v. Barnhart_, 362 F.3d 28, 32 (2d Cir. 2004) (_per curiam_) (internal and other citations omitted). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating

source opinion. <u>Halloran</u>, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); <u>Schaal v. Apfel</u>, 134 F.3d 496, 503-04 (2d Cir. 1998)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" <u>Blakely v. Commissioner of Social Sec.</u>, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). The "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process[.]" <u>Rogers v. Commissioner of Social Sec.</u>, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be , 581 F.3d at 407 (quoting <u>Rogers</u>, 486 F.3d at 243; emphasis in <u>Blakely</u>).

Where, as here, an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" <u>id.</u> (quoting 20 C.F.R. § 404.1527(d)(2)), such as "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a

-6-

specialist;  and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" Id. (quoting 20 C.F.R. § 404.1527(d)(2)).

There is no doubt that Dr. Spurling, who has been Plaintiff's psychiatrist since March 30, 2011, T.736, qualifies as a "treating physician." See Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) ("Whether the 'treating physician' rule is appropriately applied depends on 'the nature of the ongoing physician-treatment relationship.") (quoting Schisler v. Heckler, 851 F.2d 43, 45 (2d Cir. 1988)). Indeed, the Commissioner does not dispute that Dr. Spurling qualifies as a treating source. Given his specialization in psychiatry, Dr. Spurling is well-qualified to opine on the nature and extent of the limitations resulting from Plaintiff's mental impairments.

Dr. Spurling issued a Medical Source Statement dated March 9, 2012, see T.328-34, indicating that he treats Plaintiff for bipolar disorder and anxiety disorder with elements of panic disorder, and that he had last seen her on February 21, 2012. In the attached office treatment notes, Dr. Spurling stated that Plaintiff reported worsening symptoms of depression over at least the past 5 to 6 years, "clearly" with a history of psychotic symptoms, though such symptoms were currently not present. Dr. Spurling noted that Plaintiff "clearly describe[d] symptoms consistent with hypomanic periods," and opined that her symptom profile "best fits a bipolar

type II disorder[,]" which "would be consistent with her poor response to typical antidepressant medications" and "could also explain her report that Klonopin caused her to have suicidal ideation." T.346. Dr. Spurling increased Plaintiff's dose of risperidone and continued Celexa and Wellbutrin. T.347. Dr. Spurling checked boxes indicating that Plaintiff was "[l]imited" with regard to understanding and memory, sustained concentration and persistence, and adaption, but has "[n]o [l]imitation" in social interaction. T.332. Plaintiff has a "[l]imited ability to focus [and] follow multiple step procedures" a "clearly . . . decreased ability to concentrate," T.333, which symptoms "have yet to respond to treatment," id. Dr. Spurling stated that he "continue[d] to actively manage and try new medications" to address Plaintiff's mental health symptoms, which were chronic and waxed and waned. Id.

Approximately nine months later, on December 15, 2012, Dr. Spurling completed a form titled, "Evaluation of the Residual Functional Capacity of the Mentally Impaired Patient," T.427-430. Dr. Spurling rated Plaintiff's abilities to comprehend and carry out simple instructions, to remember work procedures, and to respond appropriately to co-workers as "good," see T.427-28, which the form defined as "limited but satisfactory." T.427. Dr. Spurling rated her abilities to remember detailed instructions, to interact appropriately with supervisors, to function independently on a job,

-8-

to exercise appropriate judgment, to abide by occupational rules/regulations, to make simple work-related decisions, to maintain social functioning, and to tolerate customary work pressures in a work setting, including production requirements and demands, as "fair", T.428-29, defined by the form as meaning that the claimant's functioning in that area is "seriously limited and will result in periods of unsatisfactory performance at unpredictable times." T.427-28. Dr. Spurling rated as "poor" Plaintiff's abilities to complete a normal workday on a sustained basis, to concentrate and attend to a task over an 8-hour period, and to be aware of normal hazards and make necessary adjustments to avoid those hazards. T.428-29. The form defined "poor" as meaning that the claimant has "[n]o useful ability to function" in a particular area. T.427. Dr. Spurling explained that Plaintiff's abilities to complete a normal workday and to concentrate over an 8-hour period were limited by her anxiety and panic attacks, T.428, and that when she is having a panic attack, she is "unable to attend to the pertinent stimuli and react appropriately." T.429. Dr. Spurling opined that "the stress of caring for her young children has caused worsening of her mood and anxiety/panic" symptoms. T.429. Dr. Spurling estimated that Plaintiff likely would be absent from work more than 4 days per month "as a result of the impairments or treatment," T.430, and that she is unable to work more than 4 hours per day. Id. He checked "yes" in response to

whether these limitations have been "reasonably consistent and continuing since September 5, 2011." Id.

The ALJ essentially ignored Dr. Spurling's second opinion, which showed an overall decrease in Plaintiff's level of functioning and increase in symptomatology as compared to his first opinion. Plaintiff argues that this was error. The Court agrees, as discussed further below.

The ALJ first rejected Dr. Spurling's opinion regarding Plaintiff's likely absences "as a result of the impairments or treatment," an opinion which was echoed by her primary care physician, Dr. Agata Olszowska. The ALJ commented, "Putting aside for a moment the fact that many persons see their doctors after hours, on weekends, or by taking leave for just part of the work day, the chronological treatment record fails to support the proposition that [Plaintiff] is required to spend 5 or more work days each month in the doctor's office or other medical facility receiving treatment." T.24. This statement seriously mischaracterizes the record. Neither Dr. Spurling nor Dr. Olszowska opined that Plaintiff would be "required to spend 5 or more work days each month in the doctor's office or other medical facility receiving treatment." Rather, the form the doctors were asked to complete asks how many days of work would Plaintiff be likely to miss "as a result of the impairments or treatment." There is no basis in the record for the ALJ to infer that the doctors believed

Plaintiffs' likely absenteeism would be attributable *solely* to treatment, such as attending her doctors' appointments. Furthermore, the ALJ's speculative opinion that unidentified "persons" would not have to miss that much work because they could see their healthcare providers outside of normal work hours is wholly irrelevant to the analysis. In any event, it is not a proper basis for discrediting the consistent opinions of two of Plaintiff's treating sources.

The ALJ next addressed Dr. Spurling's evaluation of Plaintiff's ability to remember detailed instructions ("fair"), ability to remember work procedures ("good"), and ability to comprehend and carry out simple instructions ("good"), and ability to make simple work-related decisions ("fair," "as long as stress is minimal"). The ALJ stated that he "essentially adopted *these* restrictions by limiting [Plaintiff] to low stress unskilled work involving simple instructions." T.25 (emphasis in original). However, there is a discrepancy between the ALJ's understanding of the terms "fair" and "good" and Dr. Spurling's understanding of those terms as defined in the forms he completed. The ALJ evidently gave "fair" its dictionary meaning, e.g., "sufficient but not ample: adequate [.]" However, the form defined "fair" as meaning that the individual's ability to function was "seriously limited and will result in periods of unsatisfactory performance at unpredictable times." Likewise, the form defined "good" as "limited

but satisfactory", and thus defined "good" in a more restricted sense than the typical dictionary definition, e.g., "of a favorable character or tendency[.]" Furthermore, the ALJ rejected, without a valid explanation, Dr. Spurling's later opinion, after 9 months of additional treatment, that Plaintiff's ability to concentrate and attend to tasks had decreased significantly.  The ALJ noted that

> such a restriction is inconsistent with [Plaintiff]'s role as caretaker of 5 children (including a young infant) and homemaker. She would not be able to carry out these responsibilities if she had 'no useful ability' to concentrate and attend to tasks. In fact, if she was so limited one might expect the Department of Social Services to be knocking at her door. Such is not the case.

T.25. As the foregoing quotation illustrates, a recurring theme of the ALJ's decision is that she cannot possibly be disabled because she cares for her children. Indeed, as Plaintiff points out, the ALJ referred to her spending time with or caring for her children more than a dozen times. See, e.g., T.13, 14, 16, 23, 24, 25, 26, 27. According to the ALJ, Plaintiff's "full time responsibilities as the sole caretaker of 5 children and the home constitute a full time job[.]" T.24. There are multiple errors in the ALJ's reliance on Plaintiff's childcare activities as the rationale for rejecting the opinions of treating psychiatrist Dr. Spurling. First, the ALJ mischaracterized the record, and ignored the fact that Plaintiff receives assistance in caring for her children, as needed, from her husband and from a friend, Betsy Crance. T.59, 198. Plaintiff also

reported that she sometimes has her oldest daughter stay home from school to help care for her youngest child. T.60.

The ALJ furthermore failed to recognize the differences between being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a "regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule[,]" SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). See, e.g., Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2005) ("A more important point is that taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not."); Zuback v. Colvin, No. 4:14-CV-00602-GBC, 2015 WL 5474846, at *19 (M.D. Pa. Sept. 15, 2015) ("[C]aring for children allows for flexibility and rest breaks. . . . Moreover, parents may go to great lengths to care for their children that would not be sustainable in the workplace, and should not be discouraged from doing so.") (citing, inter alia, Gentle, 430 F.3d at 867; Pen v. Astrue, No. 12-CV-01041 NC, 2013 WL 3990913, at *10 (N.D. Cal. Aug. 2, 2013) (the ALJ "determined from [a claimant's] statements that she is able to care for her children, drive, and shop, that she is, therefore, more active than she claims"; remanding because "the ALJ was incorrect in concluding that this is evidence of her ability to work outside of the home when the demands of a workplace environment do not afford the same opportunities for breaks, rest,

or assistance"); <u>Moss v. Colvin</u>, No. 1:13-CV-731-GHW-MHD, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job."); other citations omitted); <u>Iacobucci v. Comm'r of Soc. Sec.</u>, No. 1:14-CV-001260-GWC, 2015 WL 4038551, at *6 (S.D.N.Y. June 30, 2015) (finding reversible error where "[t]he ALJ observed that '[i]n order to properly care for her child and insure his safety, the claimant is required to demonstrate at least as much capacity for sustained concentration and attention, and ability to perform simple tasks as was required by her past work as a cashier.' The ALJ concluded that Iacobucci's 'willingness and ability to undertake the mentally (and physically) arduous task of childrearing is consistent with her ability to perform simple tasks'"). There is nothing in either the Act or the Commissioner's regulations and policy rulings to suggest that individuals who engage in child-rearing activities are disqualified from being found disabled. The ALJ's assumptions and reasoning in this case, however, stand for just such an untenable proposition. On this basis alone, the ALJ's decision warrants reversal. <u>See</u> <u>Gentle</u>, 430 F.3d at 867 ("The administrative law judge's casual equating of household work to work in the labor market cannot stand.").

Furthermore, the ALJ ignored the Commissioner's statements recognizing that individuals with mental impairments may appear to

function adequately in a restricted setting and yet be unable to meet the demands of competitive employment. See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00 (C)(3)("[The Commissioner] must exercise great care in reaching conclusions about [the claimant's] ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on [the claimant's] ability to complete tasks in other settings that are less demanding, highly structured or more supportive."); SSR 85-15, 1985 WL 56857, at *6 (S.S.A. Jan. 1, 1985) ("[T]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally ill may have difficulty meeting the requirements of so-called 'low-stress' jobs . . . .").

The ALJ also found that Dr. Spurling's opinion was "belied by the fact that [Plaintiff] reads, watches television, and puts puzzles together on a daily and weekly basis." T.25. There is nothing inherent in these activities that proves Plaintiff has the ability to perform "[t]he basic mental demands of competitive, remunerative, unskilled work[, which] include the abilities (on a

sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting[,]" SSR 85-15, much less to do so "8 hours a day, for 5 days a week, or an equivalent work schedule[,]" SSR 96-8p, 1996 WL 374184, at *2. Courts in this Circuit repeatedly have recognized that "[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job." Polidoro v. Apfel, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. 1999) (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (finding that Secretary failed to sustain burden of showing that claimant could perform sedentary work on the basis of (1) testimony that he sometimes reads, watches television, listens to the radio, rides buses and subways, and (2) ALJ's observation that claimant "'sat still for the duration of the hearing and was in no evident pain or distress'"; circuit found "[t]here was no proof that [claimant] engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job")). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ also discounted Dr. Spurling's opinion because he found "nothing in Dr. Spurling's treatment notes to suggest or support such an extreme restriction" on Plaintiff's abilities to concentrate and maintain attention. T.25. The ALJ found that "none of Dr. Spurling's functional capacity conclusions is supported by psychological testing." T.27. The Commissioner's regulations do not require that a psychiatric opinion be supported by more than a mental status examination and psychiatric history. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(B). By requiring more supporting evidence than contemplated by the regulations, the ALJ formulated his own legal standard which he then improperly utilized to assess Dr. Spurling's opinion. Moreover, where a claimant alleges a disability primarily based on a mental impairment, the treating psychiatrist's opinion may be more significant and relevant than psychological testing. See, e.g., Westphal v. Kodak, No. 05-cv-6120, 2006 WL 1720380, at *5 (W.D.N.Y. Jun. 21, 2006) (noting that the American Psychiatric Association has listed the direct face-to-face interview as the "psychiatrist's primary assessment tool") (citation omitted). "A treating psychiatrist's opinion, based on medical evidence derived from a treatment relationship consisting of face to face visits, is . . . 'inherently more reliable than an opinion based on a cold record because observation of the patient is critical to understanding the subjective nature of the patient's disease and in making a reasoned

diagnosis.'" <u>Drake v. Astrue</u>, No. 07-cv-377, 2008 WL 4501848, at *4
(W.D.N.Y. Sept. 30, 2008) (quotation omitted).

The ALJ committed further error when he discredited Dr.
Spurling's opinion based on his lay assessment of Plaintiff's
ability to understand and answer questions at the hearing. T.26,
fn. 19. This amounted to "a variant of the disfavored 'sit and
squirm' test." <u>Brown ex rel. J.B. v. Colvin</u>, No. 1:12-CV-1062-MAT,
2015 WL 1647094, at *5 (W.D.N.Y. Apr. 14, 2015) (citing <u>Brown v.
Comm'r of Soc. Sec.</u>, No. 06-CV-3174(ENV)(MDG), 2011 WL 1004696, at
*5 (E.D.N.Y. Mar. 18, 2011) ("The 'sit and squirm' test has been
rejected by the Second Circuit as impermissible, and observations
by the ALJ of any sort shall be accorded only limited weight,
'since the ALJ is not a medical expert.'") (quoting <u>Spielberg v.
Barnhart</u>, 367 F.Supp.2d 276, 282 (E.D.N.Y. 2005) (citing <u>Aubeuf v.
Schweiker</u>, 649 F.2d 107, 113 (2d Cir. 1981); other citation
omitted)). An administrative hearing constitutes a "highly
structured setting[,]" <u>Brown ex rel. J.B.</u>, 2015 WL 1647094, at *5,
and the Commissioner's regulations require the ALJ to consider the
effects of structured or highly supportive settings in assessing a
claimant's limitations. <u>Smith v. Massanari</u>, No. 00-CV-0402, 2002 WL
34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R.
§ 416.924c). Neither the law nor the record in this case supports
the ALJ's generalization about Plaintiff's attention and
concentration during the highly structured setting of a relatively

brief legal proceeding to a different environment. Moreover, the
"sit and squirm" test "is not considered sufficient evidence to
rebut findings of pain [or other symptoms] by treating physicians."
Ureña-Perez v. Astrue, No. 06 CIV. 2589 JGK/MHD, 2009 WL 1726217,
at *42 (S.D.N.Y. Jan. 6, 2009) (citing Aubeuf, 649 F.2d at 113;
other citation omitted), report and recommendation adopted, No. 06
CIV. 2589(JGK), 2009 WL 1726212 (S.D.N.Y. June 18, 2009).
Relatedly, the ALJ erred in taking a selective view of the evidence
regarding Plaintiff's concentration deficits. See Nix v. Astrue,
2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an
ALJ cannot pick and choose only parts of a medical opinion that
support his determination," and "may not ignore an entire line of
evidence that is contrary to [his] findings") (internal quotation
marks omitted). In particular, the ALJ ignored Plaintiff's reported
difficulties in concentrating well enough to understand what she is
reading and her need for assistance in reading and paying bills.
T.58. She brings someone with her to her doctor's appointments to
help her understand what the doctor is saying. T.62, 63, 456, 458.
While out shopping she will sometimes forget what she is doing and
why, T.196, and she suffers from frequent panic attacks. T.60, 61,
74, 175. Plaintiff stated that her ability to drive is limited
because of the side effects caused by her medications. T.169.

Finally, the ALJ discounted Dr. Spurling's opinion because the
treatment notes failed to reflect Plaintiff's *own opinion* of her

abilities to function in each of the areas rated by Dr. Spurling. T.27. As Plaintiff argues, the suggestion implicit in the ALJ's novel legal standard is that a psychiatrist or psychologist's *expert* medical opinion lacks validity unless confirmed by the subjective statements of a *layperson* suffering from mental disorders which conceivably may impair her insight and judgment. There is no legal basis whatsoever for this proposition.

Although the ALJ purported to consider whether there was evidence in support of the treating psychiatrist's opinion and whether that opinion was consistent with the record as a whole, the ALJ repeatedly mischaracterized the evidence, selectively quoted the record, and applied incorrect legal standards, as discussed above. Therefore, ALJ's reasons for assigning less than controlling weight to Dr. Spurling's opinion cannot be "good reasons." Reversal of the Commissioner's decision accordingly is required. See, e.g., Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (An ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.") (citation omitted).

### B. Proper Application of the Regulatory Factors to Dr. Spurling's Opinion

A comparison of Dr. Spurling's opinion with the other opinions from the other medical experts in this case reveals that it is consistent with them and the record as a whole. The Court turns first to the consistency of Dr. Spurling's opinion with his

treatment notes. As an initial matter, the Court notes that
Dr. Spurling's treatment notes are fairly extensive, usually
consisting of about 4 typed pages per visit. Plaintiff consistently
reports to Dr. Spurling many symptoms caused by her bipolar
disorder and anxiety disorder. See T.341, 342, 344, 345, 381, 382,
384, 385 (reporting and/or displaying anxiety); T.340, 383, 421,
424, 434 (reporting panic/anxiety attacks and periods of agitation;
abrupt switching into mixed mood state); T.340, 341, 344, 345, 384,
385, 431, 434 (reporting insomnia); T.340, 341, 344, 345, 431
(crying spells or crying jags); T.341, 345 (flight of ideas and
racing thoughts); T.341, 345 (difficulty concentrating); T.341,
344, 345, 382 (short-tempered); T.344, 431 (becoming withdrawn and
isolated); T.431, 434 (mild psychotic symptoms, visual
hallucinations); T.421 (hypervigilance and paranoia when around
people). The ALJ, however, focused only on evidence of any
improvement by Plaintiff during her treatment with Dr. Spurling.
This was error. See, e.g., Sutherland v. Barnhart, 322 F.Supp.2d
282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply
pick and choose from the transcript only such evidence that
supports his determination, without affording consideration to
evidence supporting the [claimant]'s claims.") (citing Lopez v.
Sec'y of Dept. of Health and Human Servs., 728 F.2d 148, 150-51
(2d Cir. 1984)).

With regard to the consistency of Dr. Spurling's opinions with the other expert medical opinions in the record, primary care physician Dr. Agata Olszowska also opined that Plaintiff likely would be absent from work more than 4 days per month. T.450. According to the VE, this level of absenteeism would foreclose competitive gainful employment. See T.75 ("[I]f it was as much as one day a week, four days a month . . . that would certainly do away with competitive work.").

Consultative psychologist Yu-Ying Lin, Ph.D. examined Plaintiff on May 1, 2012, and diagnosed her with bipolar disorder, not otherwise specified, with psychotic features; panic disorder with agoraphobia; and generalized anxiety disorder. T.360. During the examination, Plaintiff's affect was "[d]ysphoric" and her mood was "[d]ysthymic." T.359. Dr. Lin noted her attention and concentration "[a]ppeared to be moderately impaired due to emotional distress resultant to depression[,]" T.359, e.g., Plaintiff "answered 26 to 4x6" and she answered 17, 13, 11, 8, 4, 1 to the "serial threes" test. Id. Also, Plaintiff's recent and remote memory skills "[a]ppeared to be impaired due to emotional distress secondary to depression," and her intellectual functioning was "below average." T.359. Plaintiff reported that she does not shop by herself due to anxiety, and her husband helps with money management because she loses track of paying bills. T.360. Plaintiff said she does limited driving due to confusion and

-22-

anxiety, and does not use public transportation due to location anxiety. T.360. Dr. Lin concluded that the results of her examination "appear[ed] to be consistent with psychiatric problems," and "this may significantly interfere with" Plaintiff's "ability to function on a daily basis." T.360. For her medical source statement, Dr. Lin opined that Plaintiff can follow and understand simple directions and perform simple tasks independently, and perform complex tasks with supervision. However, Dr. Lin stated, Plaintiff "cannot maintain attention and concentration"; "is not able to maintain a regular schedule"; "cannot make appropriate decisions"; "cannot relate adequately with others" and "cannot appropriately deal with stress." T.360. Dr. Lin's opinions about Plaintiff's serious limitations are consistent with those of Dr. Spurling.[2] When these limitations on concentration were included in the hypotheticals presented to the VE, the VE testified that an individual who is off task 10 percent of the work day would be unable to maintain competitive employment, which requires the worker to be on task virtually all of the time

---

[2]

State agency psychiatrist Richard Altmansberger, M.D. identified "moderate" restrictions of activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence or pace. T.372. Dr. Altmansberger opined that Plaintiff has a "marked" limitation in her ability to carry out detailed instructions and is "moderately" limited in an additional twelve areas of intellectual functioning, including the ability to maintain attention and concentration for extended periods, perform activities within a schedule, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of interruptions. See T.376, 377.

outside of normal work breaks. T.74, 75. However, the ALJ accorded Dr. Lin's opinion only "partial weight," in particular rejecting limitations found by Dr. Lin regarding attention and concentration, decision-making, maintaining a schedule, interacting with and relating appropriately to others, and responding appropriately to supervision. T.27. According to the ALJ, "[i]f [Plaintiff] was so limited she would not be able to carry out her fulltime job of caretaker of 5 children (including a very young child) and homemaker." T.27. For all of the the reasons discussed above in connection with the ALJ's erroneous weighing of Dr. Spurling's opinions, Plaintiff's childcare activities are not a valid reason for discounting Dr. Lin's opinion.

### C.    Erroneous Credibility Assessment

An ALJ must follow the two-step process set forth in the regulations for evaluating a claimant's symptoms such as pain, fatigue, anxiety, or nervousness. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *6-9 (S.S.A. July 2, 1996) (summarizing framework for assessing credibility). While the regulations note that objective medical evidence is useful to this inquiry, they do not allow an ALJ to reject statements about the intensity and persistence of pain and other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ's decision "must contain

specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

Here, the ALJ simply found Plaintiff to be "not entirely credible," T.18. This finding is not "sufficiently specific," 1996 WL 374186, at *2, for meaningful appellate review; nor does it identify "specific reasons for the finding on credibility, supported by the evidence in the case record," id. Rather than considering Plaintiff's credibility in light of the required regulatory factors, see 20 C.F.R. § 416.929(c)(3)(i)-(vii), the ALJ merely summarized the medical evidence in the record without meaningful analysis of how the medical evidence detracted from Plaintiff's credibility. This error warrants reversal. See, e.g., Kerr v. Astrue, No. 09-CV-01119(GLS)(VEB), 2010 WL 3907121, at *4 (N.D.N.Y. Sept. 7, 2010) ("[T]he ALJ's discussion of the factors was simply a recitation of Plaintiff's testimony without any meaningful analysis of how those factors detracted from her credibility. Indeed, the ALJ failed to offer any explanation as to why Plaintiff's subjective complaints were found less than fully credible.") (citation omitted).

In addition, when discussing the severity of Plaintiff's psychiatric symptoms, the ALJ noted that "medical records do not

contain evidence of long-term hospitalizations, commitments, severe psychotic episodes or incidents of self-harm or harm to others associated with her diagnoses of depression and anxiety." T.21. Neither the Act nor the Commissioner's regulations or policy rulings require a claimant to obtain certain psychiatric treatment in order to be found disabled due to her mental impairment(s). The ALJ improperly relied on a medico-legal standard of his own creation to determine when symptoms from psychiatric diagnoses are severe enough to be disabling. See, e.g., Morseman v. Astrue, 571 F. Supp.2d 390, 396 (W.D.N.Y. 2008) (finding that ALJ "relie[d], in part, on his own lay opinion regarding manifestations of pain"; credibility assessment "constitute[d] a medical standard authored by the ALJ and not supported by any medical evidence in the record"). The ALJ then asserted that, "to the contrary," she "experienced few symptoms" as a result of her mental impairments. T.21. This is a mischaracterization of the record. As discussed above, and as Plaintiff argues in her Reply, Dr. Spurling's treatment notes and mental RFC assessments reflect a worsening of her symptoms over the nine months between the first and second reports. See Dkt #10, pp. 3-4 (citations to record omitted).

### D.   Remedy

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner. . ., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Courts have held that a remand pursuant to the fourth sentence of Section 405(g) is appropriate in cases where the Commissioner's decision is the product of legal error. See, e.g., Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) ("Where . . . the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.") (internal quotation marks omitted). Although it is less typical, reversal without remand is the appropriate disposition when there is "persuasive proof of disability" in the record, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and further proceedings would be of no use because there is no reason to conclude that additional evidence might support the Commissioner's claim that the claimant is not disabled, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004).

Here, none of the regulatory factors support a decision not to afford controlling weight to treating psychiatrist Dr. Spurling's later opinion, which is well supported by the evidence of record and is consistent with the opinions of consultative psychologist Dr. Lin and treating physician Dr. Olszowska. "Substantial evidence exists in the record to warrant giving deference to the opinions of Plaintiff's treating psychiatrist, and when that deference is accorded, a finding of disability is compelled." Beck v. Colvin,

No. 6:13-CV-6014(MAT), 2014 WL 1837611, at *15 (W.D.N.Y. May 8, 2014) (citing <u>Spielberg v. Barnhart</u>, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . ."")). In the present case, further administrative proceedings would serve no purpose. Accordingly, remand for the calculation of benefits is warranted. <u>See</u> <u>Parker</u>, 626 F.2d at 235.

## V.    Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings (Dkt #9) is denied. Plaintiff's motion for judgment on the pleadings (Dkt #5) is granted and the Commissioner's decision is reversed and remanded for calculation and payment of benefits. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    February 25, 2016
          Rochester, New York